# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:91-cr-00027 |
| v. | |
| | MEMORANDUM OPINION & ORDER |
| DARRON TERELL WILLIAMS, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

Defendant Darron Terell Williams moves for a reduction in his supervised release revocation sentence under § 404 of the First Step Act of 2018. Dkt. 6. Williams violated the conditions of supervised release by murdering Curtis Ray Rawlings in July 1999. Although this Court imposed his 36-month revocation sentence in 2002, Williams has not yet served this sentence because he has been incarcerated in Maryland for first-degree murder since his arrest in July 1999.

The Court finds that Williams is eligible for a reduction in his supervised release revocation sentence. After considering the relevant § 3553(a) factors, the Court will grant Williams's motion and reduce his revocation sentence to 6 months, to run consecutive to any other sentence imposed.

## BACKGROUND

On May 22, 1991, Williams pleaded guilty pursuant to a plea agreement to one count of possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). Dkts. 12-1; 12-4; 12-5. The presentence investigation report held Williams accountable for 5.09 grams of cocaine base. Dkt. 5 at 5. On April 1, 1992, the Court determined that Williams had a total offense level of 24 and a criminal history category of III,

corresponding to a then-mandatory guideline range of 63 to 78 months. Dkt. 12-5 at 4. The Court sentenced Williams to 66 months' imprisonment, to run concurrent with an existing state sentence, followed by four years of supervised release. *Id.* at 2–3.

Williams was released from federal custody on February 15, 1997 to serve his term of supervised release. Dkt. 12-6 at 1. On July 24, 1999, Maryland police officers arrested Williams and charged him with first degree murder. *Id.* On September 10, 1999, the United States Probation Office filed a report alleging that Williams violated the conditions of his supervised release requiring him not to commit any federal, state, or local crime. *Id.* The Probation Office calculated that Williams had committed a Grade A violation, and that the guideline range was 18 to 24 months. *Id.* at 2. However, because Williams's underlying offense was a Class B felony, 18 U.S.C. § 3583(e)(3) authorized a maximum term of 36 months' imprisonment. *Id.* On December 20, 2000, a Maryland court sentenced Williams to life imprisonment, with all but 40 years suspended. Dkt. 12-9. On October 24, 2002, this Court revoked Williams's term of supervised release and sentenced him to 36 months' imprisonment, to run consecutive to his state sentence.[1] Dkt. 12-8.

Williams is eligible for parole on his Maryland sentence. *See* Dkt. 17-2. After conducting a risk assessment, the Maryland Parole Commission recently recommended Williams for parole.

---

[1] Bureau of Prisons records state that Williams "was scheduled for release" on June 10, 2008 to state prison. Dkt. 12-9. These records refer only to Williams's 40-year state murder sentence and make no mention of either Williams's 36-month revocation sentence or his prior federal sentence for possession with intent to distribute. *Id.* Defense counsel contends that the Bureau of Prisons records show that Williams "was received at [a Bureau of Prisons facility] while in state custody in 2007 and completed his 36-month term in 2008." Dkt. 13 at 2. The United States counters that these records do not support an inference that Williams served his revocation sentence of 36 months already, since that sentence was imposed in October 2002—nearly six years, not just three years, before June 10, 2008. Dkt. 12 at 3. Because the Bureau of Prisons is responsible for sentencing computation, the Court declines to address this issue, which it does not believe bears on the question before it—the length of Williams's revocation sentence.

Dkt. 19 at 1–2; *see* Dkt. 17-2. If and when his parole application is approved, Williams will be released from Maryland custody and transferred to the Bureau of Prisons to serve his 36-month revocation sentence. Dkt. 19 at 2.

### 1. Eligibility

Williams argues that he is eligible for relief on his 36-month revocation sentence under § 404 of the First Step Act of 2018. Specifically, he asks this Court to exercise its discretion to reduce his sentence on the underlying conviction from 66 months to 21 months or, in the alternative, to reduce his consecutive 36-month revocation sentence to a sentence no greater than 24 months and to run that sentence concurrent to his state sentence. Dkts. 6; 13; 20. The United States concedes that Williams is eligible for consideration of a sentence reduction pursuant to § 404 of the First Step Act, but it opposes any such reduction. Dkt. 12 at 8; *see United States v. Venable*, 943 F.3d 187 (4th Cir. 2019) (holding that defendant serving term of imprisonment for revocation of supervised release is eligible for consideration for a sentence reduction if original, underlying conviction is "covered offense" under First Step Act).

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." § 3582(c). However, the Court agrees with the parties that the criminal conviction underlying Williams's supervised release revocation sentence is a covered offense under the First Step Act. In 1992, Williams was sentenced under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) for possession with intent to distribute five grams or more of cocaine base. At the time, he faced a statutory mandatory minimum sentence of 60 months. Today, after the First Step Act's changes, Williams would be sentenced under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) rather than 841(b)(1)(B)(iii); Williams would not be subject to a statutory mandatory minimum sentence but rather a statutory maximum sentence of 20 years. Because Williams was sentenced under a statute

for which sentences were modified by the Fair Sentencing Act and his violation of that statute occurred prior to August 3, 2010, Williams is eligible for consideration of a reduction in his 36-month supervised release sentence under the First Step Act. *See United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020); *see also Venable*, 943 F.3d at 192–94.

## 2. Consideration of Request

Section 404(c) of the First Step Act states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." A district court's decision whether to afford relief to an eligible defendant under the First Step Act is discretionary. *Gravatt*, 953 F.3d at 261, 264; *United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2020). Thus, even where a defendant is *eligible* to seek relief to modify his sentence under the First Step Act, the question remains whether the defendant has shown that a reduced sentence is *warranted*. *See Venable*, 943 F.3d at 194–95 (distinguishing between the court's holding that a district court had authority to resentence a defendant, and whether the defendant was entitled to the exercise of such authority); *Gravatt*, 953 F.3d at 262 (even if a defendant is "eligible" to move for relief, that "does not mean the defendant is entitled to relief under the Act," rather, "[i]t only means that his motion is entitled to be considered on the merits").

To determine the sentence that the court would have imposed under the Fair Sentencing Act, the court must engage in an analysis that involves (1) the recalculation of the guidelines range "in light of 'intervening case law,'" and (2) a reconsideration of the 18 U.S.C. § 3553(a) factors, taking into account a defendant's post-sentencing conduct. *United States v. Lancaster*, 997 F.3d 171, 175, 177 (4th Cir. 2021) (quoting *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020)) (requiring district court to apply non-retroactive intervening case law in *Norman*, 935 F.3d at 237–39, that "indicate[s] that [the defendant] cannot now be sentenced as a career offender");

4

*see also United States v. Collington*, 995 F.3d 347, 355 (4th Cir. 2021) ("[D]istrict courts must *correct* original Guidelines errors and apply intervening case law made retroactive to the original sentence.") (emphasis in original); *Chambers*, 956 F.3d at 674. In determining a revocation sentence, however, the Court considers only certain 18 U.S.C. § 3553(a) factors stated in 18 U.S.C. § 3583(c). *Cf. United States v. Coston*, 964 F.3d 289, 297 (4th Cir. 2020).

### a. Recalculation of the Guidelines Range

Williams asks this Court to exercise its discretion to reduce his sentence by either reducing his sentence on the underlying conviction from 66 months to 21 months or, in the alternative, reducing his consecutive 36-month revocation sentence to a concurrent sentence no greater than 24 months (or both). Dkts. 6; 13; 20. The Court examines each means of reducing Williams's sentence.

### i. Sentence on Underlying Conviction

Williams contends that the Court could modify his revocation sentence by reducing his already-completed sentence for possession with intent to distribute cocaine base, thereby creating a bank of overserved time that the Bureau of Prisons could credit against the time he must serve on his revocation sentence. Dkts. 6; 13.

When the Court sentenced Williams to 66 months' imprisonment in 1992, he had a base offense level of 26, a total offense level of 24, and a criminal history category of III, which produced a then-mandatory guideline range of 63 to 78 months. Dkt. 12-5 at 4; *see also* Dkt. 14 at 1, 4. Today, Williams would have a base offense level of 14, a total offense level of 12, and a criminal history category of III, producing an advisory guideline range of 15 to 21 months. *See* Dkt. 14 at 3. Williams argues that if the Court reduces his sentence to one within this new guideline range, he would have overserved that sentence by at least 45 months; once the Bureau of Prisons

credits this time against his revocation sentence of 36 months, he would have no further time to serve on his revocation sentence.

However, the Court has found and continues to find reducing a revocation sentence based on a previously overserved sentence inappropriate for public policy reasons. *See, e.g.*, *United States v. McDonald*, No. 3:09-CR-0006, 2020 WL 1016351, at *3 (W.D. Va. Mar. 2, 2020) ("This Court finds that . . . public policy considerations, including the need to protect the public and the need for deterrence, dictate against allowing this Defendant or indeed any other defendant to 'bank' time on an original sentence and seek to use that time as a basis for reduced incarceration on a revocation sentence."); *United States v. Elliott*, No. 5:02-CR-30031-1, 2019 WL 5381979, at *4 (W.D. Va. Oct. 16, 2019), *appeal filed*, No. 19-7627 (4th Cir. Nov. 1, 2019) ("[A]s a matter of policy, if prisoners entitled to First Step Act relief were allowed to 'bank' time on overserved sentences to offset terms of incarceration following revocation of supervised release, it would provide a disincentive to obey the terms of supervised release."). Accordingly, the Court declines Williams's invitation to reduce his revocation sentence by reducing his already-completed sentence for possession with intent to distribute cocaine base to create a bank of overserved time.

### ii. Revocation Sentence

For Class B felonies, 18 U.S.C. § 3583(e)(3) authorizes a maximum term of imprisonment of three years upon revocation of supervised release. For Class C felonies, however, 18 U.S.C. § 3583(e)(3) authorizes a maximum term of imprisonment of two years upon revocation of supervised release. An offense punishable by a maximum sentence of 25 years or more is a Class B felony; one punishable by a maximum sentence of 10 to 25 years is a Class C felony. *See* 18 U.S.C. § 3559.

At the time of his original sentencing and his sentencing on the supervised release violation, Williams's offense was a Class B felony because it was punishable by a maximum sentence of 40 years. Following the First Step Act, however, Williams's offense would be a Class C felony because it is punishable by a maximum sentence of 20 years. *See Venable*, 943 F.3d at 190.

Accordingly, the Court finds that the maximum supervised release revocation sentence authorized by statute in Williams's case is two years. Williams's revocation sentence of 36 months—although authorized at the time the Court imposed it—now exceeds the statutory maximum sentence of two years. Because "a court exceeds the limits of its authority when it imposes a sentence above that permitted by Congress," the Court must reduce Williams's revocation sentence to a maximum of 24 months. *Collington*, 995 F.3d at 356 (holding that in First Step Act cases "district courts abuse their discretion in letting stand a sentence of imprisonment that exceeds the statutory maximum established by the Fair Sentencing Act."); *see also* Dkts. 12 at 10, 12; 16 at 2; 20 at 3.

The parties do not dispute that Williams committed a Grade A violation, nor that he is in criminal history category III. Accordingly, the Court finds that Williams committed a Grade A violation and is in criminal history category III. Williams's guideline policy statement range on the revocation sentence therefore remains 18 to 24 months.

### b. Consideration of Applicable § 3553(a) Factors Listed in § 3583(c)

Upon revoking supervised release, the Court must sanction a violator for breaching the Court's trust, "while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. ch. 7, pt. A, n.3(b).

With respect to his history and characteristics and the need for the sentence to provide him with needed treatment or training, Williams submits that he has been rehabilitated while

incarcerated. In a July 2012 review of his case, a Maryland case management specialist described Williams as a "model" inmate. Dkt. 6-1 at 1. Following a November 2019 parole hearing, a Maryland parole commissioner wrote that Williams "presented extremely well," that he "ha[d] not had an infraction in 13 y[ea]rs," and that he had done "lots of programming." Dkt. 6-2 at 1. Indeed, while incarcerated, Williams completed his GED and earned numerous certificates for completing educational, behavioral, and vocational programming. *See* Dkts. 6-1; 6-3. Williams also received several positive work evaluations. *See* Dkt. 6-2 at 3. Williams even wrote and published a book about his experience learning how to maintain a constructive relationship with his children while incarcerated. *See* Dkt. 6-2 at 4–5. The Maryland panel of parole commissioners concluded that Williams was "ready for risk assessment [and] possible parole." Dkt. 6-2 at 1. As noted above, after conducting a risk assessment, the parole commission recommended Williams for parole. Dkt. 19 at 1–2; *see* Dkt. 17-2.

But the Court must also consider the nature and circumstances of Williams's violation, as well as the need to afford adequate deterrence to and to protect the public from Williams's criminal conduct. Williams was released from BOP custody to serve his term of supervised release in February 1997 and violated the terms of his supervised release just two years later, in July 1999, by engaging in violent criminal conduct: murdering Curtis Ray Rawlings after discovering that Rawlings had an affair with his wife. Williams's Maryland case plan states that he and his codefendant "handcuffed [the v]ictim and drove him to a secluded area in a corn field, where [his] codefendant shot and killed him." Dkt. 6-1 at 1. Williams described the murder as "a 'spur of the moment' incident that occurred after this learned of the affair," and that "his emotions and anger had gotten out of control, and that he acted violently, before he realized what he had done." *Id.* Although Williams argues that the parole commission's recommendation suggests that the

sentence he has served for first-degree murder has met the objectives of deterrence and protection of the public, *see* Dkt. 20 at 2–3, the Court finds that running Williams's revocation sentence concurrent to his state sentence or reducing Williams's revocation sentence to time served would not adequately account for these sentencing objectives with respect to Williams's breach of the Court's trust in violating supervised release.

As for the need to avoid unwarranted sentencing disparities, the Court has also taken into account reductions in supervised release revocation sentences granted pursuant to the First Step Act in other cases across this Circuit. *See* Dkts. 16; 17 at 4–6 (collecting cases); *see, e.g.*, *United States v. Makerson*, No. 1:04-CR-00064, 2020 WL 2573249, at *3 (W.D.N.C. May 21, 2020) (reducing 30-month revocation sentence to 18 months, but declining to reduce sentence further because "the sentence imposed for the revocation of the Defendant's supervised release is to punish him for the violation of this Court's trust, not for his original offense conduct"); *United States v. Marshall*, No. 1:01-cr-395, Dkt. 74 (E.D. Va. Dec. 12, 2019) (reducing 40-month revocation sentence to 24 months).

Taking all these factors into account, the Court finds that a revocation sentence of 6 months, to be served consecutive to any other sentence imposed, is sufficient but not greater than necessary to serve the purposes of sentencing on revocation of supervised release.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to reduce sentence pursuant to the First Step Act of 2018, Dkt. 6. Specifically, the Court **MODIFIES** Defendant's supervised release revocation sentence to **6 (six) months**, to run **consecutive** to any other sentence imposed. All other terms of Defendant's sentence remain the same.

It is so **ORDERED**.

The Clerk of Court is directed to send this Order to Defendant and all counsel of record.

Entered this __7th___ day of July, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE